Jason A. Imes, Esq., NV Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
E-Mail:          bkfilings@s-mlaw.com
*Counsel for Lenard E. Schwartzer, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: | Case No. BK-S-20-10250-BTB |
|---|---|
| DOMI PUBLICATIONS, LLC, | Chapter 7 |
| Debtor(s). | **TRUSTEE'S EX PARTE APPLICATION TO EMPLOY SPECIAL LITIGATION COUNSEL** |
| | (No Hearing Requested) |

Lenard E. Schwartzer, Chapter 7 Trustee (the "Trustee"), by and through his counsel, Schwartzer & McPherson Law Firm, requests authorization to employ the law firm of **SANFORD HEISLER SHARP, LLP**, the **HOLM LAW GROUP, PC**, and the **O'BRIEN LAW FIRM, APLC**, as the Trustee's joint special litigation counsel pursuant to 11 U.S.C. §§ 327(a), 327(c) and 328(a) and Bankruptcy Rule 2014(a). Any payment to these law firms will still be subject to and contingent upon separate Bankruptcy Court approval under 11 U.S.C. § 330 and FRBP 2016.

The Trustee proposes to engage these three firms on a joint contingency fee basis (plus reimbursement of reasonable litigation expenses) to pursue certain claims on behalf the Trustee and the Bankruptcy Estate in California State Courts. A copy of the proposed retention agreement is attached as **Exhibit "1."**

This Application is also based upon and supported by the *Declaration of Edward D. Chapin* on behalf of the law firm of SANFORD HEISLER SHARP, LLP (the "Chapin Declaration"), the *Declaration of Brian M. Holm* on behalf of the HOLM LAW GROUP, PC (the "Holm Declaration"), and the *Declaration of John J. O'Brien* on behalf of the O'BRIEN LAW FIRM, APLC (the "O'Brien Declaration") filed concurrently with this Application, and the following Points and Authorities:

# I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# II. CASE BACKGROUND

1. DOMI PUBLICATIONS, LLC (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 16, 2020 (the "Petition Date").

2. Lenard E. Schwartzer is the duly appointed and acting Chapter 7 Trustee in the Debtor's case.

3. It appears the Debtor filed this bankruptcy case after a 99-day trial of certain claims asserted by Jane Does against the Debtor and several of Debtor's affiliates in San Diego County (the "San Diego Litigation"). The California court issued a proposed statement of decision against Debtor and Debtor's affiliates exceeding $12 million and finding that the Debtor and its affiliates were alter egos of each other. Debtor sought and obtained an extension of the deadline to object to the proposed statement of decision and then filed this bankruptcy case rather than filing an objection and allowing the California court to enter judgment.

4. The law firm of SANFORD HEISLER SHARP, LLP ("SHS"), the HOLM LAW GROUP, PC ("HLG"), and the O'BRIEN LAW FIRM, APLC ("OLF"), (collectively "Proposed Special Counsel") represent the Jane Doe plaintiffs in the San Diego Litigation, and at the request of the Jane Doe plaintiffs, the automatic stay was lifted to allow the California judgment against the Debtor to be finalized.

# III. THE TRUSTEE'S CLAIMS

5. The Trustee has determined that the assets of the estate include a series of claims (referred to collectively as the "Claims") that will need to be investigated, developed, and pursued, including but not limited to the following:

    (i) Fraudulent transfer claims;

    (ii) Alter ego claims against Doug Wiederhold and any other appropriate persons (individuals or entities);

|  |  |
|---|---|
| (iii) | Legal malpractice claims against attorneys George Rikos, Clyde DeWitt, Aaron Sadock, and/or Daniel Kaplan; |
| (iv) | Indemnification or contribution claims against Doug Wiederhold and/or Debtor's co-defendants in the San Diego Litigation; and |
| (v) | Substantive consolidation against Doug Wiederhold and/or Debtor's co-defendants in the San Diego Litigation Action. |

6. Proposed Special Counsel have the most incentive to pursue the Claims and have offered to jointly investigate and pursue the Claims on the following contingency fee basis (plus reimbursement of costs):

(i) 33% for any recovery prior to filing a complaint;

(ii) 40% of any recovery after filing a complaint; or

(iii) 50% of any recovery after any appeal.

A copy of the proposed retention agreement between the Trustee and Proposed Special Counsel is attached as **Exhibit "1."**

7. Proposed Special Counsel will be dividing the joint contingency fee among SHS, HLG, and OLF based on each law firm's pro rata percentage of the total lodestar for work performed investigating, developing, and pursuing Trustee's Claims. Proposed Counsel have agreed the lodestar will be calculated using the following billing rates:

(i) David Sanford ($1,000/hour)

(ii) Ed Chapin ($900/hour)

(iii) Other SHS Partners ($750/hour)

(iv) Brian Holm ($750/hour)

(v) John O'Brien ($750/hour)

(vi) Cara Van Dorn ($600/hour)

(vii) SHS Senior Litigation Counsel ($600/hour)

(viii) SHS Of Counsel ($500/hour)

(ix) Other SHS or HLG Associates ($400/hour)

(x) All Paralegals, Legal Assistants, Law Clerks ($250/hour)

8. Proposed Special Counsel have extensive experience pursuing similar claims and have been successful in obtaining a finding of alter ego among all of the defendants in the San Diego Litigation.

9. Any payments to Proposed Special Counsel will still be subject to and contingent upon separate Bankruptcy Court approval pursuant to 11 U.S.C. § 330 and FRBP 2016.

## IV. SCOPE OF REPRESENTATION

10. Proposed Special Counsel will be engaged as special litigation counsel to advise the Trustee and to investigate and pursue litigation of the Claims. Proposed Special Counsel are already very familiar the facts surrounding this case based on the San Diego Litigation. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

11. Proposed Special Counsel will strive to ensure that Proposed Special Counsel's employment will not be duplicative of the role of the Trustee's general bankruptcy counsel, Schwartzer & McPherson Law Firm, and that the firms' retention as set forth herein will save the estate substantial time and monies, and is in the best interest of the Trustee, the estate, and creditors. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

12. Proposed Special Counsel acknowledge that approval of any settlement of the Claims, and payment of any fees to the firm and/or reimbursement of costs from proceeds attributable to the bankruptcy estate's Claims, will be subject to separate approval of this Court. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

## V. BASIS FOR RETENTION

11 U.S.C. § 327(a) provides that a trustee may employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested person," to represent and assist the trustee in carrying out the trustee's duties. A trustee may also, with approval of the court, employ an attorney for a "specified special purpose . . . if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate *with respect to the matter on which such attorney is to be employed.*" 11 U.S.C. § 327(e) (emphasis added).

11 U.S.C. § 327(c) authorizes employment of special purpose professionals who represent creditors when it is in the best interest of the estate and there is no actual conflict of interest.

Section 327(c) makes it clear that an attorney's representation of a creditor does not per se deprive that attorney of "disinterested" status, but rather becomes a potential disqualifier for employment if an objection is raised by another creditor or the United States *and* if an "actual conflict of interest" exists. *Id.*

As the Ninth Circuit noted in Stoumbos v. Kilimnik, 988 F.2d 949, (9th Cir. 1993):

> Section 327(c) allows the appointment of counsel to represent the trustee, even where counsel represents a creditor, where the court finds no "actual conflict of interest." Reasoning by analogy to section 327(e), several courts have held that, **where the trustee seeks to appoint counsel only as "special counsel" for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.** Fondiller v. Robertson (In re Fondiller), 15 B.R. 890, 892 (Bankr. 9th Cir.1981), appeal dismissed, 707 F.2d 441 (9th Cir.1983); *see also* Altenberg v. Schiffer (In re Sally Shops, Inc.), 50 B.R. 264, 266 (Bankr.E.D.Pa.1985) (following Fondiller). Here, with respect to the Kilimnik preference action, the interests of Cabot and the trustee coincide: if money is recovered for the estate, Cabot's pro rata recovery will ultimately be greater.

Stoumbos v. Kilimnik, 988 F.2d 949, 964 (9th Cir. 1993) (emphasis added).

Proposed Special Counsel are not asserting any pre-petition claim against this bankruptcy estate. Proposed Special Counsel's representation of the Jane Doe plaintiffs, who are creditors, will not cause the firms to act differently as special counsel to the Trustee than if the firms did not represent the Jane Doe plaintiffs. The firms will be retained by the Trustee to investigate and pursue the estate's Claims, and if the firms recover assets as special counsel and enlarge the estate, then the Jane Doe plaintiffs will ultimately receive a greater distribution in the case. The firms do not represent an interest adverse to the estate because both the Trustee and the Jane Doe plaintiffs share the same goals with respect to the matters for which Proposed Special Counsel will be retained.

The risk of any harm to the estate is effectively mitigated by 11 U.S.C. § 328(a), which provides guidance regarding the compensation of professionals engaged by the Trustee:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the

case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Section 328 permits a professional to have the terms and conditions of its employment pre-approved by a bankruptcy court, such that the bankruptcy court may alter agreed upon compensation only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions." In re Circle K, Corp., 279 F.3d 669, 671 (9th Cir. 2002). Accordingly, the bankruptcy court will have two opportunities to make any adjustments necessary to ensure that the interests of the estate are served by the retention of Proposed Special Counsel.

## VI. DISINTERESTEDNESS AND DISCLOSURE OF CONNECTIONS

Section 327 is implemented by Federal Rule of Bankruptcy Procedure 2014(a), which requires an applicant to fully and candidly disclose all connections with the debtor, creditors, parties in interest, and their respective attorneys and accountants. Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679, 693-94 (B.A.P. 9th Cir. 2006). As explained below, Proposed Special Counsel have satisfied this requirement in their detailed and thorough declarations. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

A.     Disclosure of Connections Pursuant to FRBP 2014(a)

To the best of their knowledge, neither Proposed Special Counsel nor any member of Proposed Special Counsel have any connections with the Debtors, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee in this case, **except as set forth herein.**

**Proposed Special Counsel is employed as counsel to the Jane Doe plaintiffs in the San Diego Litigation, and the Jane Doe plaintiffs now hold the overwhelming majority of claims in this bankruptcy estate. In their capacity as counsel for the Jane Doe plaintiffs, the firms**

**obtained the $12 million judgment and more than $8 million in fees and costs against the Debtor and related entities and individuals. Proposed Special Counsel's retainer agreements with the Jane Doe plaintiffs in the San Diego Litigation provide for payment of a percentage-of-recovery contingency fee. Proposed Special Counsel have not received compensation for the services performed in the San Diego Litigation under these retainer agreements. Proposed Special Counsel will provide timely service of the materials relating to this Application to each of the Jane Doe plaintiffs and will provide a corresponding certificate of service consistent with their privacy.** (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

Pursuant to FRBP 2014(a), this application is accompanied by the Chapin Declaration, Holm Declaration, and the O'Brien Declaration which constitute verified statements and set forth, to the best of the declarants' knowledge, the firms' connections, if any, with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee in this case. Proposed Special Counsel will supplement their disclosures in the event further connections are discovered regarding persons or entities that later become identified as appropriate for disclosure. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

B.    Disinterested Pursuant to 11 U.S.C. § 101(14)

To the best of their knowledge, Proposed Special Counsel are disinterested within the meaning of Section 101(14) of the Bankruptcy Code **except as set forth herein**. Proposed Special Counsel, their shareholders, counsel and associates (a) are not creditors, equity security holders, or insiders of the Debtor; (b) are not and were not, within two years before the date of the Debtor's bankruptcy petition, a director, officer, or employee of Debtors; and (c) do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, **except as stated herein**. 11 U.S.C. § 101(14) (*see* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

//

C.    Adverse Interest Pursuant to 11 U.S.C. § 327(a)

To the best of their knowledge, neither Proposed Special Counsel, nor any member of the firms, hold or represent any interest that is adverse or to the estate with respect to the matters for which they are being employed, and they are disinterested pursuant to 11 U.S.C. § 101(14) **except as set forth herein**. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

Section 327(c) makes it clear that an attorney's representation of a creditor does not deprive that attorney of "disinterested" status unless an "actual conflict of interest" exists. The interests of the Jane Doe plaintiffs and the Trustee are aligned in maximizing the value of the estate, so Proposed Special Counsel will not be representing an adverse interest. Accordingly, the Trustee has determined that, to the best of his knowledge, Proposed Special Counsel, and their partners and associates, are disinterested persons as that term is defined in 11 U.S.C. § 101(14) and pursuant to Fed.R.Bankr. P. 2014(a).

### VII. COMPENSATION ARRANGEMENT

No payments have been made or promised to Proposed Special Counsel for services rendered in any capacity whatsoever in connection with the Chapter 7 Case. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

There is no agreement or understanding between Proposed Special Counsel or any other entity for the sharing of compensation to be received for services rendered in or in connection with this Chapter 7 case **except as disclosed**. No compensation will be paid to Proposed Special Counsel except as authorized by order of this Court, after notice and an opportunity for a hearing. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

Proposed Special Counsel have not received and are not holding any retainer or advance payment for services as Trustee's special litigation counsel in this case. (*See* Chapin Declaration, Holm Declaration, and O'Brien Declaration.)

The Trustee has determined that it will be economical and consistent with the purposes and policies of the Bankruptcy Code to retain Proposed Special Counsel as joint special counsel on a contingency fee basis (plus reimbursement of costs), and Proposed Special Counsel have agreed to pursue the Claim on these terms. (*See* Chapin Declaration, Holm Declaration, and O'Brien

Declaration.)

The Trustee believes the proposed contingency fee structure for prosecuting the Claims is reasonable and consistent with rates typically charged for similar litigation and this engagement is beneficial to the estate and its creditors. The Trustee has concluded that under these circumstances, employment of Proposed Special Counsel under these terms is appropriate.

## VIII.  REVIEW BY OFFICE OF THE UNITED STATES TRUSTEE

Pursuant to 28 U.S.C. § 586(a)(3)(I) and the Trustee Handbook, the Office of the United States Trustee was provided a copy of this Application and given an opportunity to comment prior to the upload of the proposed order. No comment or objection was provided except as noted.

## CONCLUSION

Based upon the foregoing, and the supporting declarations, the Trustee requests an Order authorizing the Trustee to employ the law firm of **SANFORD HEISLER SHARP, LLP**, the **HOLM LAW GROUP, PC**, and the **O'BRIEN LAW FIRM, APLC**, as special litigation counsel to the Trustee to jointly pursue the Claims on a contingency fee basis (plus reimbursement of reasonable and appropriate litigation expenses) pursuant to the terms set forth in the retention agreement attached as **Exhibit "1,"** which may include services provided prior to this Application, pursuant to section 327(c), and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

Any payment of fees or costs to Proposed Special Counsel will still be subject to and contingent upon separate Bankruptcy Court approval pursuant to 11 U.S.C. § 330 and FRBP 2016.

Dated: March 16, 2021,

/s/Jason A. Imes
Jason A. Imes, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones, Blvd., Suite 1
Las Vegas, NV 89146
*Counsel for Lenard E. Schwartzer, Trustee*

# EXHIBIT "1"

## SPECIAL LITIGATION COUNSEL AGREEMENT

Lenard E. Schwartzer, as Chapter 7 Trustee for the Bankruptcy Estate of Domi Publications, LLC (the "Trustee") and the law firm of Sanford Heisler & Sharp, LLP ("SHS"), the Holm Law Group ("HLG"), and the O'Brien Law Firm ("OLF") hereby agree that SHS, HLG, and OLF will provide legal services to the Trustee as special litigation counsel pursuant to the terms set forth below. (SHS, HLG, and OLF will be referred to hereafter collectively as "Special Litigation Counsel").

1.  CONDITIONS: This Agreement will not take effect, and Special Litigation Counsel will have no obligation to provide legal services, until it is approved by the United States Bankruptcy Court ("Bankruptcy Court"). Upon satisfaction of these conditions, this Agreement will be deemed to take effect as of the Court approval date, or such other date the Bankruptcy Court may state.

2.  SCOPE OF SERVICES AND ATTORNEY'S DUTIES: Trustee agrees to hire Special Litigation Counsel, subject to Bankruptcy Court approval, as his Special Litigation Counsel on a contingency fee basis to investigate, research, conduct discovery on, and prosecute potential claims held by the Trustee and/or the bankruptcy estate of Domi Publications, LLC (the "Bankruptcy Estate") in California State Courts, including but not limited to:

    (i) Fraudulent transfer claims;
    (ii) Alter ego claims against Doug Wiederhold and any other appropriate persons (individuals or entities);
    (iii) Legal malpractice claims against attorneys George Rikos, Clyde DeWitt, Aaron Sadock, and/or Daniel Kaplan;
    (iv) Indemnification or contribution claims against Doug Wiederhold and/or Domi Publications, LLC's co-defendants in the state court action, which include Michael Pratt, Matthew Wolfe, Andre Garcia, BLL Media, Inc., BLL Media Holdings, LLC, EG Publications, Inc., M1M media, LLC, Bubblegum Films, Inc., Oh Well Media Limited, Merro Media, Inc., Merro Media Holdings, LLC, Sidle Media Limited, Clockwork Productions, Inc., and any associated entities (collectively, "Non-Debtor Defendants"); and
    (v) Substantive consolidation against Doug Wiederhold and/or the Non-Debtor Defendants.

3.  SPECIAL LITIGATION COUNSEL DUTIES: Special Litigation Counsel will provide those legal services reasonably required to represent the Trustee and will take reasonable steps to keep the Trustee informed of progress and to respond to the Trustee's inquiries. If a court action is filed, Special Litigation Counsel will represent the Trustee through trial and post-trial motions, and appeal. This Agreement does cover representation in collection proceedings after judgment or proceedings regarding renewal of a judgment, but in the event the Trustee engages another law firm for collection work then Special Litigation Counsel's contingency fee will be based on the net recovered proceeds remaining after payment of collection counsel's fees and costs. After consultation with Trustee, Special Litigation Counsel retain the discretion whether or not to file any cause of action.

4.     TRUSTEE DUTIES: The Trustee agrees to be truthful with Special Litigation Counsel and not to withhold information. Further, the Trustee agrees to cooperate, to keep Special Litigation Counsel informed of any information or developments which may come to the Trustee's attention, to abide by this Agreement, to seek approval from the Bankruptcy Court for this Agreement. The Trustee will assist Special Litigation Counsel by timely providing necessary information and documents. And agrees to appear at all legal proceedings when Special Litigation Counsel deems it necessary, and generally to cooperate fully with Special Litigation Counsel in all matters related to the preparation and presentation of the Trustee's claims.

5.     LEGAL FEES: Special Litigation Counsel is free to take on other professional engagements so long as same do not interfere with the Special Litigation Counsel's ability to deliver competent and effective legal services to the Trustee. Special Litigation Counsel will be compensated for its professional services on a contingency fee basis at the rates set out below. There will be no retainer. Compensation to Special Litigation Counsel will only be paid from funds recovered by Special Litigation Counsel, subject to Bankruptcy Court approval pursuant to 11 U.S.C. §330 and Federal Rule of Bankruptcy Procedure 2016.

6.     CONTINGENCY FEE: In the event there is a recovery, then Special Litigation Counsel will be jointly entitled to the following contingency fee paid from said proceeds, subject to Bankruptcy Court approval:

    (i)     33% for any recovery prior to filing a complaint;
    (ii)    40% of any recovery after filing a complaint; or
    (iii)   50% of any recovery after any appeal.

7.     JOINT FEE SPLIT AMONG SPECIAL LITIGATION COUNSEL: Special Litigation Counsel have agreed to divide their joint contingency fee among SHS, HLG, and OLF based on each law firm's pro rata percentage of the total lodestar for work performed as Special Litigation Counsel. The lodestar will be calculated using the following billing rates:

    (i)     David Sanford ($1,000/hr)
    (ii)    Ed Chapin ($900/hr)
    (iii)   Other SHS Partners ($750/hr)
    (iv)    Brian Holm ($750/hr)
    (v)     John O'Brien ($750/hr)
    (vi)    Cara Van Dorn ($600/hour)
    (vii)   SHS Senior Litigation Counsel ($600/hr)
    (viii)  SHS Of Counsel ($500/hr)
    (ix)    Other SHS or HLG Associates ($400/hr)
    (x)     All Paralegals, Legal Assistants, Law Clerks ($250/hr)

8.     WITHDRAWAL AS COUNSEL: If Special Litigation Counsel withdraw or are discharged by the Trustee from the representation governed by this contract, Special Litigation Counsel may still apply to the Bankruptcy Court for compensation pursuant to 11 U.S.C. §330 of the Bankruptcy Code for the value of the work actually performed, but such application for compensation will be at the discretion of the Bankruptcy Court. If Special Litigation Counsel are discharged without good cause, the contractual obligation herein to pay the fee is not affected.

9.  **FEES SUBJECT TO BANKRUPTCY COURT APPROVAL: Special Litigation Counsel understand and agree that payment of any attorney's fees and costs pursuant to this Agreement is subject to the prior approval of the Bankruptcy Court.**

10. REPRESENTATIONS OF COUNSEL: Special Litigation Counsel represent that they do not represent any party with an interest in or an interest against the Bankruptcy Estate or the Trustee **except for their representation of certain creditors of the Bankruptcy Estate**. Special Litigation Counsel will ensure their representation of any creditors of the Bankruptcy Estate will never conflict with its representation of the Trustee.

11. COSTS AND LITIGATION EXPENSES: Special Litigation Counsel will incur various costs and expenses in performing legal services under this Agreement. The Trustee agrees to pay for all reasonably necessary costs, disbursements and expenses paid or owed by the Trustee in connection with this matter or which have been advanced by Special Litigation Counsel on the Trustee's behalf and which have not been previously paid or reimbursed to Special Litigation Counsel. Costs, disbursements and litigation expenses commonly include court fees, jury fees, service of process charges, court and deposition reporters' fees, interpreter/translator fees, outside photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, deposition costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultant, expert witness, professional mediator, arbitrator and/or special master fees and other similar items. All such expense reimbursements will be subject to Bankruptcy Court approval prior to payment.

12. APPROVAL NECESSARY FOR SETTLEMENT: Special Litigation Counsel understands it may not make any settlement or compromise of any nature of any of the claims held by the Trustee or the Bankruptcy Estate without the Trustee and Bankruptcy Court's prior approval. The Trustee and the Bankruptcy Court retain the absolute right to accept or reject any settlement. Attorney understands and agrees that any settlement is subject to the prior approval of the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019.

13. DISCHARGE AND WITHDRAWAL: The Trustee may discharge Special Litigation Counsel at any time. Special Litigation Counsel may withdraw with the Trustee's consent or for good cause or if permitted under the Rules of Professional Conduct and/or applicable law. Among the circumstances under which Special Litigation Counsel may withdraw are: (a) with the consent of the Trustee; and/or (b) the Trustee's conduct renders it unreasonably difficult for the Special Litigation Counsel to carry out the employment effectively. Notwithstanding the discharge and provided there is a recovery, Special Litigation Counsel may apply to the Bankruptcy Court for compensation at a reasonable rate for all services provided and for reimbursement of costs advanced, but any payment from the recovery will be subject to Bankruptcy Court approval. In the event Special Litigation Counsel voluntarily withdraws from representing the Trustee without cause, Special Litigation Counsel waives, and will not be entitled to be paid, any future fees or costs by the Trustee after the date of withdrawal but may be entitled to be paid for fees and reimbursed for any costs and expenses already advanced by Special Litigation Counsel, subject to Bankruptcy Court approval.

[ CONTINUED ON NEXT PAGE ]

14. CONCLUSION OF SERVICES: When Special Litigation Counsel's services conclude, whether by completing the services covered by this Agreement, or by discharge or withdrawal, all unpaid charges for fees, costs and expenses will be due and payable upon Bankruptcy Court approval. The Trustee may have access to the Trustee's case file at Special Litigation Counsel's office at any reasonable time.

15. RECEIPT OF PROCEEDS: Any proceeds of the Trustee's case will be deposited into the Trustee's trust account for disbursement in accordance with the provisions of this Agreement and Bankruptcy Court order.

16. ENTIRE AGREEMENT: This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

17. MODIFICATION BY SUBSEQUENT AGREEMENT: This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both parties and approved by the Bankruptcy Court.

18. CONFLICT OF INTEREST: Special Litigation Counsel will secure conflict waivers from any clients they represent who are creditors of the Bankruptcy Estate, waiving any and all actual or potential Conflicts of Interest which may be created as a result of Special Litigation Counsel's execution of this Agreement and acknowledging they have had the opportunity to consult with independent counsel.

19. DISPUTES: Any dispute arising from, or related to, this Agreement shall be submitted to the Bankruptcy Court, District of Nevada, unless otherwise agreed in writing by both the Trustee and Special Litigation Counsel.

20. SIGNATURES: Each party signing below is jointly and severally responsible for all obligations due us and represents that each has full authority to execute this Agreement so that it is binding, subject to Bankruptcy Court approval. This Agreement may be signed in one or more counterparts and binds each party countersigning below, whether or not any other proposed signatory ever executes it.

[ CONTINUED ON NEXT PAGE ]

21.   SEVERABILITY: If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not impact other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be servable.

| | |
|---|---|
| March _____, 2021<br>**CHAPTER 7 TRUSTEE** | March 10, 2021<br>**SANFORD HEISLER SHARP, LLP** |
| *[signature]*<br>Lenard E. Schwartzer,<br>*Chapter 7 Trustee for the*<br>*Bankruptcy Estate of Domi Publications, LLC* | *[signature]*<br>By: Edward D. Chapin |
| March 10, 2021<br>**HOLM LAW GROUP, PC** | March 10, 2021<br>**O'BRIEN LAW FIRM, APLC** |
| *[signature]*<br>By: Brian M. Holm | *[signature]*<br>By: John J. O'Brien |